# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEREX DOOLEY, | ) | |
|       Plaintiff | ) | C.A. 14-194 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| DEPUTY SUPERINTENDENT | ) | |
| BRYANT, et al., | ) | |
|       Defendants. | ) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural and Factual History

On July 15, 2014, Plaintiff Lerex Dooley, an inmate incarcerated at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania ("SCI-Smithfield"), filed this civil rights action pursuant 42 U.S.C. §1983, against four staff members at SCI-Smithfield: Deputy Superintendent Bryant ("Bryant"); Correctional Officer O'Brien ("O'Brien"); Correctional Officer Szelewski ("Szelewski"); and Unit Manager Kessler ("Kessler").

In his complaint, Plaintiff alleges that, on the morning of July 7, 2013, he was physically assaulted by another inmate, identified as "Inmate O'Neal", who punched Plaintiff repeatedly in the head and face. (ECF No. 3, Complaint, at ¶¶ 8-11). Plaintiff alleges that the attack was broken up by Defendant O'Brien, who stated that he would document the incident as horseplay if the inmates agreed that it was over. (Id. at ¶¶ 12-16). In response, Inmate O'Neal allegedly told

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF

Plaintiff, "I'm airing you out then I'll be done," and walked away. (Id. at ¶ 17). Plaintiff alleges that he explained to Defendant O'Brien that O'Neal's comment meant that he intended to stab Plaintiff. (Id. at ¶ 18). Defendant O'Brien allegedly shrugged his shoulders stating, "As long as it's after I go home," and then instructed Plaintiff to lock up in his cell. (Id. at ¶¶ 18-19).

Later the same day, after working his prison job, Plaintiff returned to his cell, where Inmate O'Neal assaulted and stabbed him six times with a homemade knife. (Id. at ¶¶ 21-24). According to Plaintiff, O'Neal escaped without being seen, and Plaintiff, in fear of calling for help, attempted to clean his wounds himself and went to dinner. (Id. at ¶ 25). After dinner, Plaintiff returned to his cell block, where he ultimately made a correctional officer aware of his injuries and was sent to the medical department for treatment. (Id. at ¶¶ 25-27). After being treated, Plaintiff was placed in the restricted housing unit ("RHU"). (Id. at ¶¶ 28-29).

The next day, Plaintiff was given a misconduct by Defendant O'Brien for fighting with Inmate O'Neal on the morning of July 13, 2012. (Id. at ¶ 30). Plaintiff subsequently filed a grievance against Defendant O'Brien on July 23, 2012, for deliberate indifference to Plaintiff's health and safety. (Id. at ¶ 31). Defendant Szelewski was assigned to investigate Plaintiff's grievance and took a statement from Plaintiff regarding the events of July 13. At that time, Defendant Szelewski encouraged Plaintiff to file criminal charges against Inmate O'Neal with the Pennsylvania State Police, although Plaintiff expressed his reluctance to do so, fearing retaliation from O'Neal and his associates. (Id. at ¶ 32). Defendant Szelewski responded that attacks did not happen on his watch, so Plaintiff reported the events of July 13 to the police, but told the officers that he didn't want to press criminal charges against Inmate O'Neal. (Id. at

Nos. 10, 17].

¶¶ 33-35).

Plaintiff remained in the RHU until the expiration of his disciplinary sanction for fighting. During this time, rumors quickly spread among the inmates that he was a "snitch," and he received multiple threats that he would be stabbed again if he was sent back to general population. (Id. at ¶¶ 36-37). Sometime before August 25, 2012, Plaintiff was released from the RHU due to overcrowding. (Id. at ¶ 38). After receiving a number of threats from Inmate O'Neal's associates, Plaintiff wrote individual requests slips to Defendants Bryant, Kessler, and Szelewski, advising each of the threats he received and the risks of staying in general population. (Id. at ¶ 40). Defendants Bryant and Szelewski did not respond to the request slips; however, Defendant Kessler responded, stating that if Plaintiff felt threatened, he needed to "take self lock up." (Id. at ¶¶ 41-42; ECF No. 16). Plaintiff then asked to be placed in protective custody, but was informed by "Captain Heibner" that protective custody was not available because the RHU was overcrowded. (Id. at ¶¶ 43-46).

Unsatisfied with the responses he received to his requests, Plaintiff filed a grievance on September 13, 2012, complaining about the threats he was receiving and the risks associated with him remaining in general population, but no action was taken to place him into protective custody. (Id. at ¶¶ 47-48). On October 8, 2012, while Plaintiff was eating breakfast, he was assaulted by one of Inmate O'Neal's associates, who stabbed him in the head repeatedly with a sharp object. (Id. at ¶¶ 49-50). As a result of the attack, Plaintiff remained in the infirmary for approximately two months, after which he was placed in protective custody. (Id. at ¶¶ 51-52).

Based on the foregoing, Plaintiff claims that Defendants were deliberately indifferent to his health and safety by failing to protect him from assault by other inmates, in violation of his

rights under the eighth and fourteenth amendments to the United States Constitution.

Defendants have filed a motion to dismiss [ECF No. 12], seeking dismissal of Plaintiff's claims against Defendants Bryant, Szelweski, and Kessler, only, based upon Plaintiff's alleged failure to establish their personal involvement and/or failure to assert a failure to protect claim against them upon which relief may be granted. Plaintiff has filed a response to Defendants' motion to dismiss [ECF No. 14] upholding his claims against Defendants Szelewski and Kessler, but conceding dismissal of his claims against Defendant Bryant. As a result, Plaintiff's claims against Defendant Bryant will be dismissed, and Defendants' motion will be considered as to Defendants Szelewski and Kessler only.[2]

### B. Standard of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the

---

[2] Since Plaintiff's claims against Defendant O'Brien are not subject to Defendants' motion to dismiss, they will be allowed to proceed beyond the pleading stage.

facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster

Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

## II. DISCUSSION

### A. Personal Involvement

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013), citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988); Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, Defendants assert that Plaintiff's claims against Defendants Szelewski and Kessler must be dismissed because he has failed to establish their personal involvement in the alleged constitutional violations. In particular, Defendants argue that Plaintiff's claims arise solely from his utilization of request slips and grievances to inform Defendants Szelewski and Kessler of the threats he was receiving from Inmate O'Neal's associates. This argument is unavailing.

First, Plaintiff's allegations indicate that Defendant Szelewski's alleged involvement was not limited to his receipt of a request slip and grievances. Rather, Plaintiff alleges that Szelewski was the officer in charge of investigating the circumstances surrounding Plaintiff's first two attacks at the hands of Inmate O'Neal on July 13, 2012. After concluding this investigation,

Szelewski was sufficiently concerned that he encouraged Plaintiff to report the incidents to the Pennsylvania State Police. Moreover, to quell Plaintiff's fears of retaliatory attacks by Inmate O'Neal or his associates, Szelewski allegedly assured him that attacks do not happen on his watch.

Second, unlike in Rode, Plaintiff's request slips and grievance in August and September 2012, respectively, apprised both Defendants Szelewski and Kessler of the threats he was receiving **before** the final attack of October 8, 2012. In other words, these Defendants were not merely called upon to investigate and rule on a grievance regarding a past incident, but were being asked to protect Plaintiff from future attacks that appeared imminent, based on the threats he was receiving. Thus, Plaintiff's allegations are sufficient to show that both Defendants Szelewski and Kessler were apprised of the threats and had an opportunity to protect Plaintiff from further harm. This is enough to establish their personal involvement at the pleading stage.

### B. Failure to Protect

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997), quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994). To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195 at *4 (W.D. Pa. Jan. 4, 2007). For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

Here, Defendants argue that Plaintiff has failed to state a cognizable failure to protect claim against Defendants Szelewski and Kessler, because he "does not provide facts demonstrating that [said Defendants] knew of any harm that would befall Plaintiff, let alone a 'specific threat of harm' necessary to establish the Constitutional claim." (ECF No. 13, Plaintiff's Brief, at p. 7). In support of this argument, Defendants cite the court's holding in Jones that, in determining whether a defendant was deliberately indifferent, "the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known …." Jones at *4. However, this standard was announced in the context of considering a summary judgment motion, after the parties were capable of submitting evidence from which the defendants' knowledge could be discerned. Such is not the case here, as this matter is only at the pleading stage.

It is sufficient at this stage to note that Plaintiff's allegations contain enough information from which it may be found that Defendants Szelewski and Kessler each knew and disregarded the fact that Plaintiff faced a substantial risk of serious harm prior to the assault of October 8, 2012. Thus, Defendants' motion to dismiss Plaintiff's failure to protect claims against Defendants Szelewski and Kessler will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEREX DOOLEY, )
        **Plaintiff** )    C.A. No. 14-194 Erie
)
v. )
)    Magistrate Judge Baxter
BRYANT, et al., )
        **Defendants.** )

## ORDER

AND NOW, this 22nd day of May, 2015,

IT IS HEREBY ORDERED that Defendants' motion to dismiss [ECF No. 12] is granted in part and denied in part, as follows:

    1.    Defendants' motion to dismiss Plaintiff's claims against Defendant Bryant is GRANTED, and the Clerk is directed to terminate Defendant Bryant from this case.

    2.    Defendants' motion to dismiss Plaintiff's claims against Defendants Szelewski and Kessler is DENIED.

                                        s/Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        United States Magistrate Judge