IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEREX DOOLEY,<br>　　　　Plaintiff | )<br>)<br>) | C.A. 14-194 Erie |
| v. | )<br>) | Magistrate Judge Baxter |
| DEPUTY SUPERINTENDENT<br>BRYANT, et al.,<br>　　　　Defendants. | )<br>)<br>)<br>) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.　INTRODUCTION

### A.　Relevant Procedural History

On July 15, 2014, Plaintiff Lerex Dooley, an inmate incarcerated at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania ("SCI-Smithfield"), filed this civil rights action pursuant 42 U.S.C. §1983, against four staff members at SCI-Smithfield: Deputy Superintendent Bryant ("Bryant"); Correctional Officer O'Brien ("O'Brien"); Correctional Officer Szelewski ("Szelewski"); and Unit Manager Kessler ("Kessler"). Defendant Bryant has since been terminated from this case. [ECF No. 18]. Plaintiff claims that Defendants were deliberately indifferent to his health and safety by failing to protect him from assault by other inmates, in violation of his rights under the eighth and fourteenth amendments to the United States Constitution.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 10, 17].

On May 22, 2015, this Court issued a Memorandum Opinion & Order granting Defendants' motion to dismiss Plaintiff's claims against Defendant Bryant (which was conceded by Plaintiff), but denying Defendants' motion to dismiss Plaintiff's claims against Defendants Kessler and Szelewski. [ECF No. 18].[2] As a result, Defendant Bryant was terminated from this case.

The parties have since completed discovery, and Defendants have now filed a motion for summary judgment as to Plaintiff's remaining claims against Defendants Kessler, Szelewski, and O'Brien. [ECF No. 28]. Plaintiff has filed a brief in opposition, together with his own sworn affidavit. [ECF No. 33, 33-1]. This matter is now ripe for consideration.

**B.  Relevant Factual History**[3]

On July 13, 2012, Plaintiff and another inmate, O'Neal ("Inmate O'Neal"), had an altercation in the sally port area of the C-block at SCI-Albion. (ECF No. 31-4, Defendant O'Brien's deposition transcript, at pp. 26-27 (internal pp. 25-26); ECF No. 31-3, Plaintiff's Grievance No. 421176, at p. 2). Defendant O'Brien observed the two inmates in the sally port and told them to go to their cells. (Id.). Later the same day, Plaintiff and Inmate O'Neal had another altercation in Plaintiff's cell, during which Plaintiff claims that he was stabbed six times by Inmate O'Neal. Plaintiff filed a grievance regarding the incident on July 23, 2012 [ECF No. 31-

---

[2] Defendants did not seek to dismiss Plaintiff's claims against Defendant O'Brien in their motion to dismiss [ECF No. 12].

[3] The Court notes that Defendants have filed a concise statement of "undisputed" material facts [ECF No. 30], which consist primarily of statements obtained from Defendants' deposition testimony; however, these statements are largely disputed by Plaintiff's sworn affidavit submitted with his opposition brief [ECF No. 33-1]. Thus, the factual history recited herein has been gleaned from the record evidence as a whole, with appropriate citations where deemed necessary.

3], after which Defendant Szelewski spoke with Plaintiff about the incident and offered to have Plaintiff speak with the Pennsylvania State Police. (ECF No. 30, Defendants' Concise Statement, at ¶ 1; ECF No. 33-1, Plaintiff's Affidavit, at ¶ 12).

On or about August 9, 2016, Pennsylvania State Trooper Marc Stevick arrived at SCI Albion to conduct an investigation of Plaintiff's assault claim against Inmate O'Neal, as documented in a written incident report dated August 10, 2012. [ECF No. 31-2]. According to the incident report, surveillance video from the date of the incident failed to "provide any worthy evidence to assist in [the] investigation," and Plaintiff refused to be interviewed by Trooper Stevick or to otherwise cooperate with the investigation. (ECF No. 31-2 at pp. 4-5). As a result, no charges were filed. (Id.).

On September 14, 2012, Plaintiff submitted an Inmate Request to his Unit Manager, Defendant Kessler, stating that, since he was taken off cell restriction on September 10, 2012, he was receiving "comments about being a snitch" and felt "uneasy" about his surroundings and being under "the threat of being food in the Western District…." [ECF No. 31-6]. Defendant Kessler responded, "If you feel that threatened you need to take self lock up." (Id.).

On October 8, 2012, while in the dining room eating breakfast, Plaintiff was assaulted by another inmate alleged to have been an associate of Inmate O'Neal, who stabbed Plaintiff in the head with an unknown sharp object. (ECF No. 33-1, Plaintiff's Affidavit, at ¶ 25; ECF No. 31-1, Defendant Szelewski's deposition transcript, at pp. 30-31, 42 (internal pp. 29-30, 41)). Plaintiff was subsequently transferred out of SCI-Albion on or about November 27, 2012. (ECF No. 31-5, Plaintiff's cell history, at p. 2).

### C. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to

4

support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only

to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

## II.    DISCUSSION

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997), quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994). To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195 at *4 (W.D. Pa. Jan. 4, 2007), citing Farmer, 511 U.S. at 842. Yet, "deliberate indifference is more

than a mere lack of ordinary due care – it is a state of mind equivalent to a reckless disregard of a known risk of harm." Day v. Federal Bureau of Prisons, 233 Fed. Appx. 132, 134 (3d Cir. 2007), citing Farmer, 511 U.S. at 835.

Here, Defendants assert that "the record is devoid of any facts that Defendants Szelewski, O'Brien or Kessler knew of any harm that would befall Plaintiff, let alone 'a specific threat of harm' necessary to establish the Constitutional claim." (ECF No. 29, Defendants' Brief, at p. 4). This assertion will be assessed with regard to each Defendant, in turn.

### A. Defendant Szelewski

Defendants argue that there is no evidence of record showing that Defendant Szelewski was aware of a threat to Plaintiff's well-being or that he needed to be protected from a known risk of harm. In particular, Defendants cite Defendant Szelewski's deposition testimony that Plaintiff never expressed any concern about Inmate O'Neal or his associates; that he didn't know Plaintiff needed to be protected prior to the assault of October 8, 2012; and that he was not aware that Plaintiff had been labeled a snitch until after the October assault (ECF No. 31-1, Defendant Szelewski deposition transcript, at p. 25, 30 (internal pp. 24, 29)). However, this testimony is contradicted by Plaintiff's affidavit, in which he declares that, after he was returned to general population in late August 2012, he was "deeply concerned for [his] safety" and wrote a request slip to Defendant Szelewski, among others, "detail[ing] the threats that [he] was receiving, the risks [he] faced staying in general population, and the fear and stress caused by the threats." (ECF No. 33-1, Plaintiff's Affidavit, at ¶¶ 17-18). According to Plaintiff, Defendant Szelewski failed to respond to this request slip. (Id. at ¶ 19). Thus, there remains a genuine issue of material fact as

7

to whether Defendant Szelewski was made aware of, and was deliberately indifferent to, the alleged threats against Plaintiff, which can only be resolved by assessing the credibility of each party. This is the role of the ultimate factfinder at trial, not the court on summary judgment. Accordingly, Defendants motion for summary judgment as to Plaintiff's claims against Defendant Szelewski will be denied.

### B. Defendant O'Brien

Defendants contend that Plaintiff is unable to establish that Defendant O'Brien had knowledge of any threat to Plaintiff's well-being prior to Inmate O'Neal's alleged assault of Plaintiff on July 23, 2012. In particular, Defendants cite Defendant O'Brien's deposition testimony that he didn't see Plaintiff and Inmate O'Neal fighting in the sally port earlier on July 23, 2012; that he was not told by Plaintiff that there had been a fight; and that he didn't hear any threatening comment from Inmate O'Neal. (ECF No. 31-4, Defendant O'Brien's deposition transcript, at pp. 23-25 (internal pp. 22-24)). This testimony is contradicted by Plaintiff's affidavit, in which Plaintiff declares that Defendant O'Brien yelled "break it up" to end Inmate O'Neal's alleged assault of Plaintiff in the sally port; that Defendant O'Brien heard Inmate O'Neal's threat that he was going to "air [Plaintiff] out"; and that Defendant O'Brien responded by saying "so long as it's after I go home, you need to lock it in now." (ECF No. 33-1, Plaintiff's Affidavit, at ¶¶ 3-5). In addition, it is beyond dispute that a fight did occur in the sally port between Plaintiff and Inmate O'Neal, for which Plaintiff claims Defendant O'Brien wrote him a misconduct for "fighting." (Id. at ¶ 6). Based on this record, it appears there is a genuine issue of material fact as to Defendant O'Brien's knowledge of Inmate O'Neal's alleged threats toward

Plaintiff, which can only be resolved by assessing the credibility of the parties. Once again, this is the function of the ultimate factfinder, not the court. For this reason, Defendant's motion for summary judgment as to Plaintiff's claim against Defendant O'Brien will be denied.

### C. Defendant Kessler

Finally, Defendants argue that Plaintiff cannot demonstrate that Defendant Kessler was deliberately indifferent to his safety. The Court agrees. The only evidence cited by Plaintiff in support of his claim against Defendant Kessler is her response to his Inmate Request of September 14, 2012, in which she told him that if he felt threatened, he needed to "take self lock up." (Id.). Rather than evidencing deliberate indifference, however, this response indicates that Defendant Kessler appropriately instructed Plaintiff on what he needed to do to seek protection if he felt threatened. Moreover, Defendant Kessler testified that the only way she could send someone to the RHU was by writing a misconduct that the Captain deemed serious enough to warrant RHU placement. (ECF No. 31-7, Defendant Kessler's deposition transcript, at p. 25 (internal p. 24)). Thus, the Captain was the individual ultimately empowered to place Plaintiff in the RHU, not Defendant Kessler. In fact, Plaintiff alleges in his complaint that he requested to be placed in protective custody in the RHU but was denied by a "Captain Heibner" because the RHU was overcrowded. (ECF No. 3, Complaint, at ¶¶ 45-46). This decision does not fall on Defendant Kessler. In short, Plaintiff has failed to produce sufficient evidence to demonstrate that Defendant Kessler was deliberately indifferent to his safety, and summary judgment will be granted in her favor.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date: September 28, 2016